[Civ. No. 143.　First Appellate District.—July 12, 1906.]

# ELLA BACON SOULE, Appellant, v. FRANK SOULE, Respondent.

DIVORCE—DECREE FOR ALIMONY—CONSTRUCTION—POWER OF MODIFICATION—FAILURE TO APPEAL.—The power to modify any provision for alimony in a decree for divorce in favor of the wife for an offense of the husband, conferred upon the court by section 139 of the Civil Code, enters into every decree granting such alimony, as fully as if incorporated in its terms, and does not depend upon any reservation of such power in the decree.　The power being conferred by the legislature, the court cannot devest itself thereof; and it has jurisdiction to grant an application of the defendant to modify the decree, notwithstanding his failure to appeal therefrom.

ID.—POWER TO SUSPEND PAYMENT UNTIL FURTHER ORDER.—Under the power of the court to modify its decree for alimony, the court is authorized to grant to the defendant, when justice requires it, a temporary exemption or release from the payment of any alimony until the further order of the court.

ID.—DECREE FOR PERMANENT ALIMONY—AGREEMENT FOR LIFE—BURDEN OF PROOF.—Where the parties agreed upon a monthly sum to be inserted in the decree for permanent alimony, the burden is upon the plaintiff to show an agreement that the provision was to be for life, and that such agreement was made known to the court before the decree was signed.　The decree is the act of the court, and any agreement between the parties that was not known to the court will have no weight in construing its intention.

ID.—CONSTRUCTION AND EFFECT OF DECREE.—Where no other agreement except as to monthly amount of "permanent alimony" was brought to the attention of the court, the decree is to be construed as not based upon any agreement, but upon its own consideration of the relative situation of the parties, and its effect is to be determined in accordance with the legal signification of its language.

ID.—EXTENT OF POWER OF MODIFICATION—"ALIMONY FOR LIFE."—In determining the extent of the statutory power of modification, it is to be borne in mind that even if the terms of the decree had provided alimony for life, its modification by the court is expressly authorized by section 139 of the Civil Code.

ID.—"PERMANENT ALIMONY."—The term "permanent" in a decree for alimony is not the equivalent of "perpetual," "unending" or "lifelong" or "unchangeable"; and in using the term "permanent alimony" in its decree, the court simply disignates the character of the alimony finally awarded, as distinguished from "temporary"

4 Cal. App.—7

alimony awarded during the pendency of the action, and not as precluding the statutory power of the court to modify the "permanent alimony" decreed.

Id.—Legal Effect of Findings—Agreement of Parties.—The failure of the court to find in accordance with the averments of the plaintiff that certain transfers of property by her were in consideration of an agreement on the part of defendant that the payment by him to her of $75 per month as alimony should continue for all time during her life was in legal effect a finding that they were not made upon that consideration, and its finding that a part of the consideration was that the decree for permanent alimony should contain the clause of $75 per month is supported by testimony that that was the only agreement between the parties.

Id.—Improper Annulment of Decree for Alimony—Limit of Authority.—The court had no power to annul the decree allowing alimony so as to leave the decree as if the court had omitted any provision for the support of the wife. The only authority of the court is to modify that portion of the decree "from time to time," as the court may deem just in view of any changed circumstances of the parties.

APPEAL from an order of the Superior Court of Alameda County, modifying a decree for permanent alimony. H. A. Melvin, Judge.

The facts are stated in the opinion of the court.

Lloyd & Wood, and A. Heyneman, for Appellant.

Deamer & Stetson, for Respondent.

HARRISON, P. J.—A decree of divorce between the parties herein was rendered by the superior court of the county of Alameda December 19, 1896, of which the following is a portion:

"It is further ordered, adjudged and decreed by this court that the defendant shall pay to the plaintiff the sum of seventy-five dollars per month in United States gold coin for her support, which said sum of seventy-five dollars shall be payable on the fifth day of each and every month and shall be permanent alimony."

In August, 1903, the defendant therein, in pursuance of previous notice thereof, moved the court for an order vacating and annulling the above portion of the judgment, and re-

leasing him from the payment of any further sums under the provisions of the decree, stating generally as the grounds of his motion that the circumstances of the parties to the judgment had materially changed since its rendition; that he was unable further to continue said payments, and that the plaintiff had no need of support from him; that it was not necessary, just or equitable that he be longer required to make any payment for her support; and in connection therewith presented an affidavit setting forth the facts relied upon by him in support of said motion. The plaintiff filed an objection to the court entertaining the motion, on the ground that, inasmuch as no appeal had been taken from the judgment, and the time for an appeal had expired, the court had no jurisdiction to make the order asked for. The court overruled this objection, and the plaintiff then filed her affidavit in reply to the application, traversing many of its averments, and averring that intermediate the commencement of the action and the rendition of the decree the defendant agreed with her that, if she would assign her interest in certain insurance policies and in certain real estate, he would, in consideration of such assignment and transfer, pay to her the sum of $75 per month as alimony, and that said payment should continue for all time during the life of the plaintiff; that she accepted said proposition and made said assignments, and that the court signed a decree in conformity with such agreement.

At the hearing of the motion testimony was given by the respective parties, and by the attorneys by whom the action for divorce had been conducted, and upon its conclusion the court found, among other facts, that the plaintiff is a wealthy woman; that her fortune has greatly increased since the making and entry of the decree and is more than sufficient for her support and maintenance and the support and maintenance of her child; that the defendant is poor and in debt, and that his income has not increased since the making and entry of said decree, but his necessary expenses and the cost of living has increased; that the monthly payment of said sum of $75 to the plaintiff by him works a hardship on him, and is not necessary to the plaintiff for her support and maintenance or for the support or maintenance of anyone depending upon her; that said sum is necessary for the proper support of the defendant and his family.

The court also found that prior to the entry of the decree the plaintiff quitclaimed to the attorneys for the defendant her interest in certain of his separate real property (of the value of about $1,500) and in certain community property (of the value of about $400) which he had previously conveyed to them as security for their fees, and transferred to her children, the issue of the marriage between her and the defendant, her interest in a certain paid-up policy of life insurance (her interest therein being contingent upon her surviving the defendant and in case she did not survive him the policy being payable to the said children); that, as a part of the consideration for the said assignments, it was agreed between the plaintiff and the defendant that the decree in the action should contain the above-quoted provision.

The court further found that the defendant did not agree to or with the plaintiff that he would pay the said sum of $75 per month or any sum during her life, or that any sum agreed by him to be paid to her as alimony or allowance was agreed by him to be paid for any period; and that he never agreed to pay to her or for her support any money or allowance for any fixed time, or for or during her lifetime, and never agreed or intended that said decree should be unchanged in respect to the allowance to her.

Upon the facts found by it the superior court held that "The defendant is entitled to an order of the court modifying said decree, and exempting him from the payment of any allowance to the plaintiff until further order of the court," and directed that an order to that effect be entered. From the order entered thereon the present appeal has been taken.

1. The court had jurisdiction to entertain the application of the defendant notwithstanding his failure to appeal from the judgment. Section 139, Civil Code, declares: "Where a divorce is granted for an offense of the husband the court may compel him to provide for the maintenance of the children of the marriage, and to make such suitable allowance to the wife for her support during her life or for a shorter period as the court may deem just, having regard to the circumstances of the parties respectively; and the court may from time to time modify its orders in these respects."

This statutory provision enters into every decree in an action for divorce which provides for the payment by the husband of an allowance for the support of the wife, as fully as

though it should be incorporated into the terms of the decree. The authority of the court to modify its decree in this respect does not depend upon a reservation therefor in the decree itself, but exists by virtue of a statute, and being conferred upon the legislature, it is beyond its power to devest itself of such authority. (*Campbell* v. *Campbell,* 37 Wis. 706.)

2. The objection that under its power to "modify" its decree the court is not authorized to grant the defendant a temporary exemption or release from the payment of any alimony must be overruled. The section of the code places no limitation upon the extent to which it may make such modification, the principle upon which the authority is to be exercised being that which determines its original order, viz., that the allowance to be made by the order as modified shall be such as the court may deem just, "having regard to the circumstances of the case." Under this section it may modify its former order either by increasing or reducing the amount of money to be paid at any one time, or enlarging or diminishing the frequency with which the payments are to be made. Neither is the authority to modify the decree limited by the section to a mere change in the *amount* of the allowance to be paid, but it includes a modification of the order in any respect which, under the circumstances of the particular case, may seem just to the court. Under such discretionary authority it is within the power of the court not only to change the amount of the allowance, but also to suspend any enforcement of the order until its further direction. That the circumstances of the present case justified the court in modifying the original decree appears from its finding that the monthly payment of $75 is not necessary to the plaintiff for her support or maintenance, but is necessary for the proper support of the defendant, and that the payment thereof works a hardship upon him. The sufficiency of the evidence to sustain this finding is not challenged by the appellant, and indeed the fact was itself practically admitted, by her merely denying in her answer that her income is *"far in excess"* of the sum required or sufficient for her maintenance or support. The case of *Howell* v. *Howell,* 104 Cal. 45, [43 Am. St. Rep. 70, 37 Pac. 770], is not inconsistent with this rule. In that case there was nothing in either the complaint or the judgment about alimony. The right of the wife to an allowance **for**

her support had not been established in the decree. It would have been competent for her in her action for divorce to ask for such allowance from the defendant, but by her choosing to waive such demand she could not assert her claim for alimony after she had ceased to be his wife. The court held that section 139 clearly contemplates that the right to alimony ''shall have been presented and litigated in the action for divorce and established by the judgment; and that *when the right to alimony has been thus established* the amount may be changed by a modification of the order.'' In the present case the right of the plaintiff to alimony was established by the decree in her action for divorce, and section 139 gives to the court the authority to modify it.

3. The chief ground urged in support of the appeal is that the provision for alimony in the decree was inserted therein by reason of an agreement between the parties that the defendant should pay to the plaintiff for her support the sum of $75 per month during her lifetime; and that the finding of the court that such agreement was not made is contrary to the evidence.

The burden of establishing such agreement was upon the plaintiff, and in her affidavit in reply to the defendant's application, after stating his agreement to pay $75 per month for her support, she stated that he agreed that such payment ''should continue for all time during the life of the plaintiff.'' She presented, however, no evidence in support of this averment. Upon her oral examination at the hearing she stated that she had nothing to do with the making of the agreement, and did not personally deal with either the defendant or any attorney in his behalf. The defendant testified in direct terms that he never agreed to pay any amount of money to her during her life, or authorized any other person to make such agreement, and that he never heard or was informed that the plaintiff made such claim until her affidavit was read at the hearing of this motion. Mr. Lloyd, who was one of the attorneys for the plaintiff in the action for divorce, and who conducted the negotiations on her behalf on this subject, testified that in the only interview with him of which he had any recollection, the defendant never made any statement that he would pay the allowance to the plaintiff during her life, and that the defendant never used that language; that his negotiations on the subject were with Mr. Whitney, the defendant's

attorney, and with the plaintiff; that prior to the signing of the decree he had several discussions with Mr. Whitney, and that these conversations "led to the agreement in writing which is the decree itself." Mr. Whitney testified that he agreed only to what is in the decree; that he and Lloyd came to an understanding that the plaintiff was to have $75 a month as permanent alimony, and that the decree embodied all that they agreed on. Mr. Lloyd also testified that on behalf of the plaintiff he demanded at the commencement of the negotiations an allowance of $150 per month; that Mr. Whitney protested against it and said that the defendant could not pay it; and that the plaintiff finally acquiesced in $75. He also testified that Mr. Whitney never said in substance or effect that the allowance should continue during her lifetime; that he said to Mr. Whitney: "If I reduce it down to $75 this is the end of the thing, and it remains that way to be put in here as permanent alimony, and I put it in the decree as permanent alimony fixed and ended between them." He also stated that the decree, together with the quitclaims and the assignment of the insurance policy by the plaintiff, embody the whole agreement between her and the defendant. The decree was thereupon prepared by Mr. Lloyd with the above provision for alimony therein, and submitted to Mr. Whitney, who said to him that it was satisfactory; and they thereafter went into court, and upon stating that it had been agreed upon between them it was signed by the judge. Before it was presented to the judge it was submitted to the defendant by his attorney, and upon his inquiring the meaning of the words "permanent alimony," Mr. Whitney stated to him that it was the same as any other alimony, and might be changed by the court, either by diminishing or abolishing or increasing the amount; to which the defendant replied, "On that understanding it is all right." The plaintiff on the other hand, on asking her attorney the meaning of the same, was told it meant for as long as she lived.

It thus very clearly appears that there was no agreement between the parties, either by themselves or through their attorneys, that the defendant should pay alimony to the plaintiff throughout her lifetime; and it does not appear that there was any mutual understanding by the parties that by the use of the term "permanent alimony" such an agreement was implied, or that the term was inserted in the provision,

with any agreement or understanding between them that it should have any meaning other than its legal significance. As it does not appear that the attorneys, or either of them, at any time in their negotiations stated that the payment was to continue during her life, it cannot be contended that there was any oral stipulation between them of which the terms were so agreed upon that it can be enforced. (See *Smith* v. *Whittier,* 95 Cal. 279, [30 Pac. 529].) It is equally clear that no agreement of this nature on the part of either the parties or their attorneys was at any time brought to the notice or knowledge of the court, and it is not to be assumed that the court intended to incorporate an agreement into its order unless it is shown that the terms of that agreement were made known to it before the decree was signed. The decree is the act of the court, and any agreement between the parties with reference to its provisions that was not made known to the court will have no weight in construing the intention of the court. *Parkhurst* v. *Parkhurst,* 118 Cal. 18, [50 Pac. 9], is inapplicable. In that case the parties had made and signed a written stipulation that the wife should be awarded the greater portion of the property and be charged with the maintenance and education of the infant children at her own expense, and that she should not have any alimony or allowance from her husband; and the decree was entered in accordance with the terms of this stipulation. The authority given the court by section 139 to modify its decree respecting alimony was not involved—the only question presented being the right of the wife under section 138 to its modification in respect to the maintenance and education of the children. The refusal by the superior court to grant the wife's application for a modification of this provision in the decree was affirmed by the supreme court, upon the ground that it was to be assumed that the property was awarded to her for the very purpose of maintaining and educating the children, and that it did not appear that they were not being properly maintained and educated. In *Wilson* v. *Wilson,* 45 Cal. 399, it was held that a prior or contemporaneous parol agreement between the parties, the effect of which would be to materially vary the terms of the decree and change the rights of the parties thereunder, could not be shown.

4. The decree of the court is therefore not to be construed as having been based upon any agreement, but is to be as-

sumed as having been made upon its own consideration of the
relative situation of the parties—the faculties of the husband
and the needs of the wife; and its effect is to be determined
in accordance with the legal significance of its language under
the statutory power given to the court by section 139; and in
determining the extent of this power it is to be borne in
mind that if the decree had provided that the payment of
alimony to the plaintiff should continue ''during her life'' its
modification by the court is expressly authorized by that sec-
tion.

The term ''permanent'' is not the equivalent of ''perpet-
ual'' or ''unending'' or ''lifelong'' or ''unchangeable''; and
in using the term ''permanent alimony'' in the decree the
court simply designated the character of the alimony which
it awarded, rather than the amount to be paid, or the time
during which the payment should continue. Alimony which
is awarded by a final decree of divorce is designated as ''per-
manent'' in distinction from that which is awarded during
the pendency of the action, which is designated as ''tem-
porary.'' (Bishop on Marriage, Divorce and Separation,
sec. 1386; 2 Am. & Eng. Cyc. of Law, 2d ed., 92; Anderson's
Law Dictionary, h. v.; Abbotts' Law Dictionary; Bouvier.)
''Permanent alimony is alimony awarded on or after the
determination of the suit. It is permanent only as distin-
guished from temporary, for it may be increased or dimin-
ished.'' (Stewart on Marriage and Divorce, sec. 360.)

That the designation of the amount of alimony awarded to
the wife in a decree of divorce as ''permanent'' does not pre-
clude the court from a subsequent modification of the provi-
sion has been many times declared by the supreme court. In
*Ex parte Spencer,* 83 Cal. 460, [17 Am. Rep. 266, 23 Pac.
395], the court awarded the wife $50 per month ''as perman-
ent alimony,'' which was afterward reduced to $25 per month.
In discussing the subject the court said: ''The court is to fix
the measure of the compensation by 'having regard to the
circumstances of the parties respectively,' these circumstances
furnishing the best means for determining such amount. As
these circumstances may differ at different times 'the court
may from time to time modify its orders in that respect.' ''
In *Wolff* v. *Wolff,* 102 Cal. 433, [36 Pac. 76; 1037], where a
certain amount had been awarded the wife as permanent ali-
mony in the decree of divorce, the court said: ''It will

always be within the power and discretion of the court to modify the allowance of alimony in the future if just cause appear for such modification.'' (See, also, *Ex parte Hart*, 94 Cal. 254, [29 Pac. 744].)

5. The failure of the court to find in accordance with the averments of the plaintiff, that the transfers of property by her were made in consideration of an agreement on the part of the defendant that the payment by him to her of $75 per month as alimony should continue for all time during her life, was in legal effect a finding that they were not made upon that consideration (*Thompson* v. *McKay*, 41 Cal. 211; *Lamb* v. *Wahlenmaier*, 144 Cal. 91, [103 Am. St. Rep. 66, 77 Pac. 765]); and its finding that a part of the consideration therefor was that the decree should contain the clause above quoted is in accordance with the testimony of witnesses that the only agreement between the parties was that the decree should provide that the plaintiff should have $75 per month as permanent alimony.

6. In its conclusion of law from the facts found by it the court found that ''the defendant is entitled to the order of the court, modifying the said decree and exempting the defendant from the payment of any allowance to the plaintiff until the further order of the court,'' and directed that a ''proper order be entered accordingly.'' In the order which was subsequently entered thereon it is ordered and adjudged that the decree ''be and the same is hereby modified by annulling that portion of said decree which is in the words and figures following (reciting the above-quoted provision), and it is hereby ordered and adjudged that said portion of said decree be, and the same is, hereby annulled accordingly.

''And it is hereby ordered and adjudged that until the further order of the court the defendant hereby be and he hereby is wholly relieved and exempted from paying any sum whatever to the plaintiff as alimony or as allowance for her support.''

In thus ''annulling'' that portion of the decree the court exceeded its jurisdiction. The decree which was rendered in 1896 was a determination of the rights of the parties, and had become final except as the power was reserved to the court by section 139 to modify ''from time to time'' that portion, directing the payment of alimony. By that decree the court adjudged that the plaintiff was entitled to alimony

from the defendant; but the effect of an order annulling this portion of the decree would be to vacate and set aside that portion of the court's adjudication, and leave the decree as if the court had omitted to make any provision for her support, and the parties would thereupon be in the position presented in *Howell* v. *Howell,* 104 Cal. 45, [43 Am. St. Rep. 70, 37 Pac. 770]; whereas, the only authority given to the court by section 139 is to modify this portion of the decree "from time to time" as the court may deem just in view of any changed circumstances of the parties. The closing paragraph of the order by which the court orders that the defendant be "wholly released and exempted" from the payment of alimony "until the further order of the court" is inconsistent with the provision of the order annulling that portion of the decree which provides for the payment of alimony, but is in accordance with the provisions of section 139 and in direct harmony with the findings of the court.

7. The appellant has assigned as error many of the rulings of the court upon the admission of evidence at the hearing, but we are of the opinion that the appellant suffered no prejudice thereby, and that the conclusion of the court was in no respect affected by its rulings on such objections.

The cause is therefore remanded to the superior court, and that court is directed to modify its order by eliminating therefrom all the provisions purporting to annul any portion of the original decree of December 19, 1896, and as so modified the said order shall stand affirmed. Each party to pay its costs incurred upon this appeal.

Hall, J., and Cooper, J., concurred.